IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOSHUA DANIEL BISHOP, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| vs. | : | |
| | : | NO: 5:08-CV-91(HL) |
| HILTON HALL, Warden, | : | |
| | : | |
| Respondent | : | |
| | : | |
| ⸻⸻⸻⸻⸻ | : | |

## ORDER

Pending before the Court is Petitioner's Motion for Leave to Conduct Discovery and Authorization and Payment of Necessary Expert Services. (R. at 14).

## I. BACKGROUND

### A. Facts

The historical facts concerning this case were set forth as follows by the Supreme Court of Georgia:

> The evidence presented at trial authorized the jury to find the following: Morrison drove Bishop and Bishop's co-indictee, Mark Braxley, to a bar. Bishop and Braxley decided to steal Morrison's car. The three left the bar around 11:00 p.m. and drove to Braxley's trailer. Bishop reached into the sleeping Morrison's pocket for the car keys, but Morrison awoke and sat up. Bishop began to beat Morrison about the head and  face with a blunt object. When Morrison was unconscious, Bishop took the car keys. Eventually realizing that Morrison was dead, Bishop and Braxley wrapped and then loaded the body into the back seat of Morrison's car. They drove to a dumpster which was located a short distance from Braxley's trailer. After unsuccessfully

attempting to toss Morrison's body into the dumpster, Bishop and Braxley left
the body on the ground where it was discovered several hours later. They
drove Morrison's car into the nearby woods, set it on fire, and then walked
back to Braxley's trailer to dispose of evidence of their crimes. After his arrest,
Bishop made a statement in which he admitted delivering the blows with a
wooden rod until Morrison stopped breathing, and described how he and
Braxley disposed of the body and burned the car. Bishop subsequently
confessed that, some two weeks prior to the murder of Morrison, he
participated in the murder of Ricky Lee Wills and that he buried Wills' body
in the woods near Braxley's trailer. After investigators recovered Wills' body,
a grand jury indicted Bishop and Braxley for that murder as well. The trial
court admitted evidence regarding Bishop's participation in Wills' murder in
aggravation of punishment during the penalty phase of this trial for Morrison's
murder.

*Bishop v. State*, 268 Ga. 286, 286-87 (1997).

### B.  Procedural History

A Baldwin County Grand Jury indicted Petitioner for malice murder and armed
robbery on July 11, 1994.  *Bishop*, 268 Ga. at  286 n.1.

On February 12, 1996, the jury found Petitioner guilty of both charges.  (Resp't Ex.
1, p. 400-401).   The jury, on February 13, 1996, "returned a verdict imposing a death
sentence, finding, as the aggravating circumstance, that [Petitioner] had murdered Morrison
in the course of committing the additional capital felony of armed robbery."  *Bishop*, 268
Ga. at 286; (Resp't Ex. 1, p.  399, 402).   The trial court also sentenced Petitioner to a
consecutive life sentence for armed robbery. (Resp't Ex. 1, p. 403).

Petitioner filed a motion for new trial on March 8, 1996, (Resp't. Ex. 1, pp. 406-408),
and an amendment to that motion on August 14, 1996. (Resp't Ex. 1, pp. 417-433).  The trial
court denied Petitioner's motion, as amended, on September 19,1996. (Resp't Ex. 1, p. 434).

2

Petitioner filed a notice of appeal and the Georgia Supreme Court affirmed his conviction and sentence on July 16, 1997. ***Bishop***, 268 Ga. at 296.   The Georgia Supreme Court denied Petitioner's motion for reconsideration on July 30, 1997. (Resp't Ex. 31). Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on February 23, 1998. ***Bishop v. Georgia***, 522 U.S. 1119, rehearing denied, ***Bishop v. Georgia***, 523 U.S. 1089 (1998).

Petitioner filed a Petition for Writ of Habeas Corpus in the Superior Court of Butts County, Georgia on August 31, 1998. (Resp't Ex. 37).  Almost four years later, on January 14, 2002, Petitioner filed an amended petition.  (Resp't Ex. 40).  The Butts County Superior Court held an evidentiary hearing on April 22-23, 2002.  (Resp't Exs. 48-85).  The court entered an order denying the petition in its entirety on March 17, 2006.  (Resp't Ex. 95).

On July 3, 2006, Petitioner filed an application for a certificate of probable cause to appeal from the denial of habeas corpus relief.  (Resp't Ex. 97).  The Georgia Supreme Court denied this application on October 9, 2007.  (Resp't Ex. 99).  Petitioner's motion for reconsideration was denied on November 5, 2007.  (Resp't Ex. 101).

On March 28, 2008, Petitioner filed his Petition for Writ of Habeas Corpus by a Person in State Custody in this Court.

## II. STANDARDS GOVERNING DISCOVERY AND APPOINTMENT OF EXPERTS IN FEDERAL HABEAS CORPUS CASES

### A.  Requests for Discovery

"[A] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course."  ***Bracy v. Gramley***, 520 U.S. 899, 904 (1997).  Rule 6(a) of the Rules Governing § 2254 Cases (hereinafter "Rule 6") provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  The Supreme Court has explained that Rule 6(a) is to meant to be consistent with ***Harris v. Nelson***, 394 U.S. 286 (1969). ***Bracy***, 520 U.S. at 909; ***See also*** Rule 6 Advisory Committee's Notes.  A petitioner has established "good cause" for discovery if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  ***Harris***, 394 U.S. at 299.

Petitioner maintains that he does not have to show diligence in his pursuit of discovery at the state level in order to be entitled to discovery at this stage in the litigation. The United States Court of Appeals for the Eleventh Circuit has addressed this issue in two cases.  First, in ***Isaacs v. Head***, 300 F.3d 1232 (11th Cir. 2002), Isaacs sought leave from the district court to take discovery from the media sources that were present at his trial in order

4

to determine the contents of a prayer that was given at the opening of his trial.[1]  The district court denied discovery and the presentation of evidence concerning the prayer.

The Eleventh Circuit held that "[i]n passing [the Anti-terrorism and Effective Death Penalty Act (hereinafter "AEDPA")], Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing." *Isaacs*, 300 F.3d at 1248-49.   The Court stated that Isaacs had not been "reasonably diligent in trying to develop the factual record while in state court" and the district court had, therefore, correctly denied his requests for discovery and an evidentiary hearing.  *Id*.  Specifically in relation to Isaacs' request for discovery, the court held

> [Isaacs] does not explain why the discovery that he seeks now is any different from  the discovery that was available to him in state courts.  Under these circumstances, we conclude that the district court properly denied Isaacs' request to conduct additional discovery concerning the prayer because he neither exercised sufficient diligence to satisfy the requirements of § 2254 (e)(2) nor showed "good cause" as required by Rule 6(a).

*Id*. at 1250.

In another case, *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002), the Eleventh Circuit again addressed the issue of whether a habeas petitioner should be granted leave to conduct discovery.   Crawford obtained a Georgia Bureau of Investigation (hereinafter

---

[1] Isaacs maintained that the giving of the prayer at the opening of his trial violated his due process rights.  The court reporter at his trial had failed to include the contents of the prayer as part of his trial transcript.  Therefore, Isaacs sought to discover the contents of the prayer from media sources present at the trial.

"GBI") report during his state habeas proceeding.  The report included information about various stains on a mattress, blankets, and clothing.  One day before the evidentiary hearing in the state habeas corpus court, Crawford filed a motion for independent serological testing on these items.  The state court denied the motion as untimely.  *Id*. at 1328-29.

In his federal habeas action, Crawford again requested to have the items tested.  The Eleventh Circuit explained that the district court correctly denied discovery because "Crawford failed to exercise sufficient diligence in seeking testing of items mentioned in the GBI report while in state court."  *Id*. at 1329.  The court held that "in light of both § 2254 (e)(2) and Rule 6(a), we conclude that Crawford was not entitled to have the items from the GBI report tested after bringing his case in the federal courts."  *Id*.

In both *Isaacs* and *Crawford*, the Eleventh Circuit clearly denied discovery because the petitioners failed to exercise sufficient diligence to obtain the sought-after discovery in the state courts.   The Court notes, however, that even prior to the enactment of AEDPA, courts have denied a federal habeas corpus petitioner's request for discovery if he failed to adequately develop the information sought while his case was pending in the state courts. See *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)(explaining that "[t]he State further points out that [the petitioner] made no request to the state post-conviction court to review the files . . . that he now deems critical, and that he had ample opportunity to seek these documents at the state post-conviction proceeding, but chose not to.  In sum, we think that [the petitioner] had opportunity to explore the files of the state, and that the district court was

not in error for denying [petitioner's] discovery request.").

### B. Requests for financial assistance

To the extent that Petitioner is seeking financial assistance for an investigator, his request is governed by 18 U.S.C. § 3599 (f), which provides as follows:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

*Id.*

Petitioner has not cited, and the Court has not found, any Eleventh Circuit cases directly interpreting and applying this statute.  However, other circuits have held that petitioners "are entitled to experts . . . only upon a showing of reasonable necessity." ***Rojem v. Gibson***, 245 F.3d 1130, 1139 (10th Cir. 2001).  Additionally, if the expert in question will provide information that is merely redundant of that already on record, expert assistance is not reasonably necessary.  ***Bonin v. Caldera***, 59 F.3d 815, 838 (9th Cir. 1995); ***Wright v. Angelone***, 151 F.3d 151, 163 (4th Cir. 1998).

## III.  PETITIONER'S SPECIFIC REQUESTS

### A. Board of Pardons and Paroles Files

Petitioner seeks access to three files from the Georgia State Board of Pardons and Paroles (hereinafter "the Board"): The parole files of Mark Braxley (Petitioner's co-defendant) and Seth Hatchett (a "jailhouse snitch"), as well as Petitioner's own parole file.

Petitioner explains that these files "may support his ***Brady*** claims."  (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 11).

It does not appear that these files were ever mentioned until approximately three years after Petitioner filed his state habeas petition.  In 2001, Petitioner subpoenaed these files, along with fourteen others, from the Board.  (R. at 13).  Pursuant to O.C.G.A. § 42-9-53 (b), parole records are considered "confidential state secrets" and O.C.G.A. § 42-9-53 (c) provides that anyone who divulges such "confidential state secrets" is guilty of a misdemeanor.  Based on these provisions, the Board filed a motion to quash the subpoenas. (R. at 13).  Petitioner "failed to respond or otherwise object" to the motion to quash.  (R. at 13).  The Butts County Superior Court ruled in favor of the Board and quashed the subpoena. (R. at 13).

Petitioner complains that the Butts County Superior Court "granted the Board's motion without conducting an in camera review" of the files.  (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 11).  Petitioner states that "[i]n doing so, the state habeas court prevented [Petitioner] from adequately developing claims based on the state's suppression of evidence relating to his co-defendant and a jailhouse snitch who testified at trial."  (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 11).

8

However, it does not appear that Petitioner ever requested that the state habeas court conduct any such review of the files.  The Georgia Supreme Court has held that "on request, a trial court should review the defendant's parole file in camera, and disclose potentially mitigating evidence to the defendant that he does not otherwise have ready access to." ***Stripling v. State***, 261 Ga. 1, 6 (1991).   It does not appear that Petitioner made such a request regarding these three files.  Moreover, Petitioner never even responded to the motion to quash, never informed the state habeas court of the purpose of the subpoenas; and never requested that the state habeas court reconsider its ruling.  See ***Mangum v. State***, 274 Ga. 573, 581 (2001)(Sears, J., dissenting)("defense counsel acted properly in subpoenaing the juvenile records and in asking the trial court to conduct an in camera review of those records to determine if they contained any relevant information.")  In light of this, the Court finds that Petitioner failed to exercise sufficient diligence to obtain these files while in state court, and, therefore, the Court denies discovery at this stage in the litigation.

The cases cited by Petitioner do not dictate a different result.  In fact, the two Georgia Supreme Court cases that Petitioner cites set forth the proper procedure to be followed in order to obtain parole files.  In ***Stripling***, the Court explained that a trial court should, on request, review the defendant's own parole file and disclose mitigating evidence to the defendant.  ***Stripling***, 261 Ga. at 6.  However, "in the absence of a reasonably specific request for relevant and competent information, the trial court may decline to conduct in-camera inspection of parole files of persons other than the defendant.  ***Id***.  Also, in ***Pope v.***

*State*, 256 Ga. 195 (1986), the court held that "the appropriate procedure to be followed is that . . . upon a timely and proper request, the trial court should obtain the parole file of the defendant and review it in camera.  Those portions of the file, if any, which are potentially mitigating should be disclosed to the defendant."  *Id*. at 212.

Finally, in the last case cited by Petitioner, ***Moore v. Kemp***,  809 F.2d 702 (11th Cir. 1987), the petitioner's state habeas counsel subpoenaed a key witness' probation file and subpoenaed the chief probation officer for the circuit to testify at the state habeas corpus evidentiary hearing.  *Id*. at 725.  The State objected on the grounds of confidentiality and the court held an in-camera inspection of the file.  *Id*. at 725-26.  Thereafter, the court refused to release information regarding the witness' probation revocation proceedings.  *Id*. at 726.  Unlike the situation that existed in ***Moore***, Petitioner simply subpoenaed the probation files and, when faced with a motion to quash the subpoenas, completely failed to respond, request an in camera inspection, or otherwise explain to the state habeas court why he needed the files.  Simply, Petitioner "failed to exercise sufficient diligence in seeking" the parole files. *Crawford*,  311 F.3d at 1329.

Due to Petitioner's lack of diligence at the state court level, this Court does not have to inquire further concerning these discovery requests.

### B.  Investigative Funds to Locate Seth Hatchett, Jason Arnett, and Totie Cook.

Petitioner states that despite his diligent efforts during the pendency of the state habeas corpus proceedings, he was unable to locate and interview three witnesses: Seth

10

Hatchett, Jason Arnett, and Totie Cook.  It appears that Petitioner's investigator spoke with many sources, checked numerous criminal records, and visited various addresses in her attempts to locate these three people.  (Aff. of Patty Daniel).  Therefore, it appears that Petitioner was diligent, but unsuccessful, in his attempts to locate these witnesses while his case was pending at the state habeas corpus level.[2]  As Petitioner has shown diligence, the only remaining issues are whether Petitioner has shown that "investigative . . . services are reasonably necessary" and shown "good cause" to interview these individuals.  18 U.S.C. § 3599 (f); Rule 6.

### (1) Seth Hatchett

Seth Hatchett was a jailhouse snitch who testified during the penalty phase of the trial. Hatchett testified that Petitioner confessed to cutting Ricky Willis' throat and burying his body in the backyard.  (Resp't Ex. 20, p. 2268-2281).   At trial, Hatchett acknowledged that he was in prison because the balance of his probation had been revoked due to a robbery charge.  (Resp't Ex. 20, p. 2277-80).  Petitioner contends now, as he did at the state habeas level, that Hatchett received a deal for this testimony against Petitioner because Hatchett did

---

[2]The Court notes that while this case was pending before the state habeas court, Petitioner submitted a "Proffer Regarding Attempts to Locate Witnesses," which addressed Petitioner's attempts to locate these witnesses.  Although Petitioner now maintains that he does not have to show diligence at the state level for this Court to grant his discovery requests, Petitioner acknowledged in the proffer that "[i]n the event that [he] would be forced to seek federal habeas corpus relief, a prerequisite for permitting factual development of claims is a showing of diligence in his efforts to develop the state habeas court record."  (Resp't Ex. 89, p. 1).

not receive additional jail time for the robbery charge.[3]  Petitioner claims that he needs to locate and interview Hatchett to support his ineffective assistance of counsel claim and claim under ***Brady v. Maryland***, 373 U. S. 83 (1963).

Respondent counters that any information gained from Hatchett would not warrant the grant of relief under Petitioner's ineffective assistance of counsel claims.  Respondent also claims that "Petitioner's ***Brady*** claim is procedurally defaulted, therefore, discovery to support such claim should be denied."  (Resp. on behalf of Resp't in Opp'n to Pet'r Mot. for Leave to Conduct Disc. and Authorization of Necessary Expert and Investigative Fees and Memo. in Supp. Thereof, p.  17).

The Court agrees with Respondent in relation to the ineffective assistance of counsel claim.  At the state habeas level, Petitioner maintained that his counsel "was ineffective for declining to elicit at trial the fact that Hatchett received no additional jail time for his February 1995 guilty plea to a May 1994 robbery charge." (Resp't Ex. 95, p. 89).  Counsel's failure to present the terms of Hatchett's plea agreement to the jury is not in dispute and needs no additional factual development.  Therefore, Petitioner has not shown good cause to interview or depose Hatchett in relation to this claim.

In relation to the ***Brady*** claim, Respondent is incorrect in his assertion that simply because the state habeas court found this claim procedurally defaulted this Court should

---

[3]The Court notes that during the trial, Hatchett testified that he did not receive any deals or promises in exchange for his testimony (Resp't Ex. 20, p. 2277-80).  Moreover, at the state habeas corpus evidentiary hearing, the prosecutor testified that no witness was offered any type of deal or immunity in order to secure their testimony.  (Resp't Ex. 49, p. 418-19).

automatically deny discovery. Respondent overlooks the fact that Petitioner could overcome this procedural default if he is able to show cause and prejudice. ***Hill v. Jones***, 81 F.3d 1015, 1022 (11th Cir. 1996). To establish cause Petitioner would have to show that some external factor prevented him from raising this claim at the appropriate time. See ***Murray v. Carrier***, 477 U.S. 478 (1986). The State's suppression of any agreement with Hatchett would amount to cause. Petitioner would still have to show prejudice to overcome the default. "The analysis of prejudice for the procedural default of a ***Brady*** claim is identical to the analysis of materiality." ***Jefferson v. Terry***, 490 F. Supp.2d 1261, 1342-43 (N. D. Ga. 2007). The Court makes no determination at this time regarding whether Petitioner can establish cause and prejudice to overcome the procedural default of his ***Brady*** claim. All the Court determines at this time is that Petitioner has shown good cause to interview Seth Hatchett in an attempt to overcome the procedural default of his ***Brady*** claim and that an investigator is reasonably necessary to locate and interview this witness. Such interview will be limited to the issue of whether Hatchett received any type of deal or leniency from the prosecution or State in exchange for his testimony against Petitioner.

### (2) Jason Arnett

Jason Arnett testified during the penalty phase of Petitioner's trial. Arnett testified that Petitioner threatened him at the Hilltop Grill and Petitioner bragged about having a body buried behind his house. (Resp't Ex. 20, p. 2305). According to Arnett this occurred "on the Friday before the weekend Leverett was murdered," which would be June 17, 2004.

13

(Resp't Ex. 20, p. 2314).

Petitioner explains that Arnett later stated, and agreed to sign an affidavit, explaining that "he had been pressured to testify falsely by law enforcement officials and that he had many pending charges that were of concern at the time he chose to testify for the state." (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 17-18).

The state habeas court found that Petitioner had procedurally defaulted his claim that the "State provided an undisclosed deal to Arnett in exchange for his allegedly false testimony." (Resp't Ex. 95, p. 49). As explained above, Petitioner would need to to show cause and prejudice to overcome such default. If the State did, if fact, suppress such evidence,[4] this would amount to cause. It would still be up to Petitioner to show prejudice. At this stage in the litigation, the Court finds, as it did with Hatchett, that Petitioner has shown an investigator is reasonably necessary to locate and interview Seth Hatchett only on the issue of whether he received any type of deal or leniency from the prosecution or State for his testimony against Petitioner.

### 3.  *Totie Cook*

A witness named Bennie Aycock testified during the sentencing phase of Petitioner's trial. (Resp't Ex. 20, p. 2471). Specifically, Aycock testified that Petitioner hit him in the

---

[4]Again, as with Seth Hatchett, the Court notes that such a suggestion is unlikely given testimony from the witness at trial and from the prosecutor during the state habeas court proceedings. (Resp't Ex. 20, p. 2268-2302; Resp't Ex. 49, p. 418).

head with a brick, which caused extensive and permanent damage to the left side of his face. (Resp't Ex. 20, p. 2479-81). According to Petitioner, "other witnesses [have explained that] . . . Cook stated that Mr. Aycock was lying and that [Petitioner] never hit Aycock with a brick." (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 18). Petitioner alleges that he needs to interview Cook at this time because Aycock's testimony supported the "State's theory that [Petitioner] was more culpable than Braxley" and "Cook's account of what occurred during this incident may provide further evidence that [Petitioner] is not the violent killer the state portrayed him to be." (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 19).

Petitioner fails to link this request to any claim contained in his federal habeas corpus petition. Presumably Petitioner claims that his trial counsel was ineffective for failing to present testimony from Cook or failing to effectively impeach Aycock. However, Petitioner provides no details of such allegations and this Court finds Petitioner has completely failed to allege, much less discuss, how Cook could support his ineffective assistance of counsel claim, or any other claim in his petition. See *Harris v Nelson*, 394 U.S. 286, 299 (1969) (holding petitioner must make "specific allegations" to show the court that if the discovery is granted and the facts developed, he may be entitled to relief). Therefore, Petitioner's request for funds to locate and interview Cook is denied.

### C. DNA TESTING

15

Petitioner seeks "access to the evidence in the possession of the Baldwin County Sheriff's Office for the purpose of performing DNA testing." (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 23). Specifically, Petitioner requests "that he be given an opportunity to perform DNA testing to determine whether the substance on Mr. Braxley's clothing is in fact what it appears to be: the blood of victim Leverett Morrison." (Pet'r Mem. of Law in Supp. of Mot. for Leave to Conduct Disc. and for Authorization of Necessary Expert and Investigative Expenses, p. 23).

While this case was pending at the state habeas court, Petitioner filed a Motion for Access to Evidence for Purpose of DNA Testing. (R. at 18). Petitioner requested DNA testing of blood on "a piece of cardboard" and on "two (2) items of clothing and one (1) pair of boots allegedly belonging to  Mr. Mark Braxley." (Resp't Ex. 39, p. 1). The Butts County Superior Court denied the testing because that court was "not the proper venue for such a request by Petitioner." (Resp't Ex. 39, p. 1). The Court explained that the items were in the possession of the Baldwin County Sheriff's Office and the Court lacked "authority to compel any action or inaction by representatives or employees of the non-party Sheriff's Office." (Resp't Ex. 39, p. 1). Furthermore, the Court explained to Petitioner that he should seek discovery of this evidence "through proper use of the discovery process detailed within O.C.G.A. § 9-11-26, *et seq*." (Resp't Ex. 39, p. 1). The Court even explained that Petitioner should "submit a copy of the instant Order to the Sheriff's Office as evidence of the Court's

16

finding that" (1) the items at issue (including Braxley's clothing) are subject to discovery as they are "reasonably calculated to lead to the discovery of admissible evidence" and (2) "access to the items should be granted for the sole purpose of DNA testing."  (Resp't Ex. 39, p. 2).

There is no indication that Petitioner ever followed through with the state habeas court's instructions and properly sought discovery of these items.  Although the state court instructed Petitioner on how to properly obtain DNA testing and even provided an Order to assist in this endeavor, Petitioner completely failed to follow through.  Given this complete failure to heed the advise of the state habeas court, the Court finds that Petitioner "failed to exercise sufficient diligence in seeking testing of [these] items . . .  while in state court." *Crawford*, 311 F.3d at 1329.  Therefore, "in light of both § 2254(e)(2) and Rule 6(a), [this Court] concludes that [the petitioner is] not entitled to have the items . . . tested after bringing his case in the federal courts."  *Id*.

## IV.  CONCLUSION

The Court **DENIES IN PART AND GRANTS IN PART** Petitioner's Motion for Leave to Conduct Discovery and Authorization and Payment of Necessary Expert Services. The Court **GRANTS** Petitioners request for funds to hire an investigator to locate and interview Seth Hatchett and Joseph Arnett only on the issue of whether they received any type of deal or leniency from the State or prosecution for their testimony against Petitioner. The Court **DENIES** Petitioner's motion in all other respects.

For information regarding the limitations on fees and expenses for investigative

services and the submission of vouchers for such fees and expenses, Petitioner should refer to the Court's April 2, 2008 Order.

Further, Petitioner is given thirty (30) days from the date on this Order to complete this discovery and any motion for an evidentiary hearing that he so desires to file should be filed in accordance with the Scheduling Order dated June 27, 2008.

**SO ORDERED**, this 1st day of December, 2008.


_s/   **Hugh Lawson**_____
HUGH LAWSON
UNITED STATES DISTRICT COURT

lnb